WATTS, J.,
dissenting, which HARRELL and BATTAGLIA, JJ., join.
Respectfully, I dissent. This is a worrisome attorney discipline proceeding against a lawyer who allegedly engaged in conduct that was prejudicial to the administration of justice. Specifically, serious allegations were made against Patrick Guy Samuel Marie Merkle (“Merkle”), Respondent, by his former client, Sheila Coates-Black (“Coates-Black”), who was allegedly a vulnerable person in an emotionally abusive relationship with her husband when Merkle represented her.
*640 At its core, this attorney discipline proceeding illustrates an all-too-important point. Women, and members of the public in general, routinely turn to lawyers when they are vulnerable— e.g., during divorce, child custody, and criminal proceedings and so forth. When a woman—or any person, for that matter—raises significant allegations of improper conduct against a lawyer, the person expects that the allegations will be resolved and that specific and detailed findings of fact will be made to enable this Court to determine whether the lawyer violated the Maryland Lawyers’ Rules of Professional Conduct (“MLRPC”), and, if so, the appropriate sanction.
(A) Coates-Black’s Vulnerability
To begin, I would sustain the Commission’s exception to the hearing judge’s finding that there was no evidence that Coates-Black was emotionally vulnerable when Merkle represented her. Simply put, from my perspective, the hearing judge’s finding is clearly erroneous.
The record amply demonstrates that Merkle was well aware that Coates-Black was in an abusive relationship and emotionally vulnerable when he represented her. On January 26, 2010, Merkle e-mailed Coates-Black, stating: “It is well time for you to be documenting instances of emotional abuse. Date, time and manner.” On March 1, 2010, Coates-Black emailed Merkle, stating: “I can []now longer deal with this mental and verbal abuse so I am asking if I need[ ] to move out before some[]thing dreadful happen[s.]” And, at the disciplinary hearing, Merkle testified that he was aware of the abusive situation, stating: “I have a pretty good deal of experience somewhere on the order of [fifteen] cases involving short[-]duration marriages with ... violence, but [ ] CoatesBlack, her violence is really emotional violence, this back and forth stuff with the ... temporary protective orders[.]” Indeed, at the hearing, Merkle asked Coates-Black whether she had been “in an emotionally abusive arrangement staying” with her husband, and Coates-Black replied: “Sometimes.” Coates-Black also testified that she sought protective orders *641 against her husband because she had been “afraid” and because her husband had “bec[o]me so abusive.”[1]
Yet, the hearing judge failed to address or make any findings of fact concerning Coates-Black’s vulnerability other than to state: “Bar Counsel did not introduce any evidence of Coates[-Black]’s mental state at the hearing, yet argued in her closing that Coates was a vulnerable individual [of] who[m Merkle] took advantage[.]” This conclusory statement utterly fails to account for the evidence that leads to the inescapable conclusion that Coates-Black was, indeed, vulnerable. Based on all of the above evidence, the hearing judge clearly erred in finding that there was no evidence that Coates-Black was emotionally vulnerable when Merkle represented her.
(B) Lack of Findings of Fact
Next, pursuant to Maryland Rule 16—759(c)(6),[2] I would remand for additional factfinding concerning the alleged violation of MLRPC 8.4(d) (Conduct that is Prejudicial to the Administration of Justice).[3] Specifically, evidence offered by Bar Counsel indicated that Merkle, among other things: (1) “commented on” Coates-Black’s attire while she was visiting him in his office, and later described Coates-Black’s attire as having a “plunging neckline” and being “quite revealing from the middle”; (2) sat on the same side of his desk as CoatesBlack while she was visiting him in his office and asked her to rub his shoulders, prompting Coates-Black to decline and move to the opposite side of Merkle’s desk “to keep [him] away from” her; (3) attempted to visit Coates-Black at her apartment after 10:00 p.m.; and (4) offered, on multiple *642 occasions, to let Coates-Black use an apartment in a building that he owned.[4] Despite this evidence, and despite the serious allegations of improper conduct that Coates-Black raised at the hearing, the hearing judge inexplicably failed to make any findings of fact whatsoever concerning these matters. The allegations were well-detailed and described Merkle’s alleged improper and unseemly conduct toward Coates-Black, yet the hearing judge did not address or even mention them. Equally troubling is that, at oral argument, Merkle implied that he acted as a father figure to Coates-Black.[5] The potential that Merkle abused his position of power with a client who was in an emotionally vulnerable condition is troubling and cause for concern, to say the least. Yet, for unexplained reasons, the hearing judge failed to make any findings of fact concerning these matters.[6]
In sum, despite a myriad of evidence concerning Merkle’s alleged improper conduct toward Coates-Black, the hearing judge oddly failed to make any findings of fact concerning Merkle’s conduct and conclude whether the conduct was a violation of MLRPC 8.4(d). To remedy this obvious defect, I *643 would remand this attorney discipline proceeding to the hearing judge with instructions to make findings of fact as to Merkle’s alleged improper behavior toward Coates-Black and conclude whether such behavior was a violation of MLRPC 8.4(d). Again, women—and all persons who are represented by lawyers—expect that allegations concerning the lawyers’ misconduct will be adequately resolved by hearing judges in attorney discipline proceedings and, ultimately, addressed by this Court. Respectfully, I dissent.
Judge HARRELL and Judge BATTAGLIA have authorized me to state that they join in this opinion.

. Al oral argument, Merkle stated that Coates-Black was experiencing “turmoil ... in her marriage” when he represented her.

. Rule 16-759(c)(6) provides that this Court “may order ... a remand” in an attorney discipline proceeding.

. I take no contrary position to the Majority’s conclusions that Merkle did not violate MLRPC 1.2 (Scope of Representation and Allocation of Authority Between Client and Lawyer), 1.6 (Confidentiality of Information), or 7.3(a) (Direct Contact with Prospective Clients).

. The hearing judge found that: (1) shortly after their initial meeting in October 2008, Merkle e-mailed Coates-Black with information about a jazz club, stating: "[Wjhen I heard that you went to a jazz club, this is what I thought of. I have been on the emailing list for Shore Jazz for years and keep them in mind”; (2) in 2009, Merkle and Coates-Black became friends on Facebook, and Merkle commented as follows on a photograph that Coates-Black had posted: "Maybe that's me on [Coates-Black's daughter's tattoo!” The hearing judge made no further findings of facts concerning these two matters. The record reveals that, in the e-mail, Merkle stated that he kept Shore Jazz "in mind for beach dates[.j”

. Specifically, Merkle stated: "I have a lot of dialogue with a lot of people where I’m kinda like the dad. And [ ] Coates[-Black] was one of these people.”

. In one instance, after summarizing an incident in which Merkle accepted medication from Coates-Black and was lying on her bed, the hearing judge found that Merkle "did not make any inappropriate comments or gestures towards [] Coates[-Blackj.” This conclusory statement regarding one instance of alleged misconduct does not suffice to address the multiple allegations of Merkle’s improper conduct and the evidence offered at the hearing.